Henry G. Meiser v. Commissioner. Pauline A. Meiser v. Commissioner.
Henry G. Meiser v. Commissioner
Docket Nos. 4197, 4198.
United States Tax Court
1946 Tax Ct. Memo LEXIS 205; 5 T.C.M. (CCH) 320; T.C.M. (RIA) 46099; April 29, 1946
*205 A. Calder Mackay, Esq., Arthur McGregor, Esq., Howard W. Reynolds, Esq., 728 Pacific Mutual Bldg., Los Angeles, Calif., and Charles J. Higson, Esq., for the petitioners. A. J. Hurley, Esq., for the respondent. HARLAN
Memorandum Findings of Fact and Opinion HARLAN, Judge: By agreement these cases are consolidated. These proceedings are brought for the redetermination of a deficiency of $688.86 in the income tax of each of the petitioners for the year 1941. The question to be determined is whether petitioners' loss on their investment in beneficial units of the Rancho Golden Citrus Association was sustained in the taxable year 1941, as claimed by petitioners, or in a year prior thereto, as determined by the Commissioner. Most of the facts herein are stipulated to which stipulation reference is hereby made. The remaining facts are established by oral testimony. Findings of Fact Petitioners are husband and wife and filed separate community property returns for the calendar year 1941 with the collector of internal revenue for the sixth district of California. In said returns each petitioner deducted the sum of $8,827.92 as representing their community shares of *206 a capital loss claimed after crediting final liquidation receipts on their unit interests in a trust known as the Rancho Golden Citrus Association. This deduction was disallowed by the Commissioner. On May 20, 1927, petitioners and others formed an association, the Rancho Golden Citrus Association, under a declaration of trust for the declared purpose of taking over and managing the Rancho Golden Grove. On May 28, 1930, the petitioners, who were trustees under the former deed of trust, transferred title to said real estate to the Bank of Italy National Trust and Savings Association as trustee under a second declaration of trust. This was the document under which petitioners continued to operate, first as beneficial unit holders in the trust and later as substitute trustees thereof until December 24, 1941, when the trust was dissolved by action of the holders of more than one-half of the beneficial units in said trust. This latter declaration of trust provides, among other things, that the trustee, who held the title to the real estate involved, should look after its protection and upkeep, pay taxes, liens and encumbrances, and see to the proper insurance. The trustee was also *207 expected to sign all necessary documents and to keep records of the transfers of beneficial interests. The actual management of the trust property, outside of the above items, was in the hands of an executive committee consisting of five members who operated the ranch, sold the produce, and applied the proceeds to the care of the property, after which it was provided that the funds remaining should be distributed among the various beneficiaries in proportion to their holdings. The executive committee also had power to levy assessments against the unit holders and they were directed to elect one of their members as active manager of the affairs of the association. There was no direct provision for an election of new members to the executive committee or for removal of members from this committee except that the general power was reserved in the holders of more than one-half of the beneficial interests to change or modify the operating conditions of the trust at any time and in any manner. For some time prior to 1939 the Commissioner of Internal Revenue had ruled that this trust was taxable as a corporation. Following this ruling the trust filed its tax returns on corporate forms and *208 continued to do so until its dissolution in 1941. Some time in the latter part of 1939 the Rancho Golden Grove property, at that time consisting of approximately 120 acres which constituted the entire property then being operated by the trust, was sold by the trustees. The trustees received in exchange secured notes and obligations having a fair market value of $9,957.60. The cost base for said property at the time of the sale was $138,696.28 After the sale the assets of the trust were as follows: Cash
$ 928.00
Accounts receivable
1,324.00
Balance due on note of purchaser se-
cured by a trust deed on the real es-
tate sold
1,300.00
Two notes by purchaser as trustee of
Williams Estate, also secured by trust
deed on the real estate sold by the
association
3,500.00
4,204 shares of revolving fund stock in
Butte County Citrus Association
4,204.00 The liabilities consisted of accounts payable in the amount of $1,896. During the years 1940 and 1941 the association transacted only such business as was involved in the converting of its assets into cash. One suit was filed and compromised, in February 1941, and an assessment of $3,500 was collected from the *209 unit holders to pay the expenses of operation and litigation. On December 24, 1941, the holders of the beneficial interests in the trust filed a notice with the trustees of an election to revoke and terminate the trust and, pursuant to the trust agreement, the remaining assets were distributed among the holders of beneficial interests in said association as tenants in common. At the time of the dissolution of the association the petitioners herein held a beneficial interest in said association of 56 units out of 100 units outstanding. Opinion For petitioners to have suffered a deductible capital loss from their investment in beneficial units in the Rancho Golden Citrus Association in 1939 as determined by the Commissioner it would have been necessary either for those units to have become worthless or for the petitioners to have sold or exchanged their units at a loss in that year. Since it is admitted that petitioners' beneficial units were not sold or exchanged during 1939 and it is also admitted that said beneficial units throughout 1939 and up until the dissolution of the association in December 1941 had a substantial value, the only question left for determination in this proceeding *210 is as to whether or not the association ceased to have sufficient characteristics of a corporation in October 1939 when it sold its operational assets, to permit the beneficial units to continue to be treated as corporate stock for the purpose of determining a capital loss therein. The respondent argues that the quasi corporate character of the association did not continue in existence after the sale of the Rancho Golden Grove property in 1939, and that thereafter it could not be classified as a business association. If this association continued to possess the taxable characteristics of a corporation there would seem to be no question that its beneficial units continued to have value so long as the assets exceeded the liabilities, excluding outstanding stock, or, if this was not true, so long as the beneficial units had sufficient potential earning capacity to give them a marketable value or to justify a reasonable owner thereof in a belief in their economic recovery. Under such circumstances these units, which admittedly did have value during 1939, would not have become worthless until final liquidation. For a case involving similar facts to those of the pending litigation, except *211 to the extent that a corporation was involved and not a trust association, see . In this case petitioner was a corporate stockholder who claimed a capital loss in 1937. The corporation involved suspended business in 1929, except for the purpose of disposing of its equipment, making a few casual sales at a financial loss, collecting an assessment and liquidating its liabilities. In 1937 the corporation dissolved. The Court held the loss to have occurred in that year. We can find no reason in law for distinguishing the taxable rights and obligations of the Rancho Golden Citrus Association from those of a corporation after the sale of its operational assets. When this association was organized it had all the characteristics necessary to its taxability as a corporation. There were a number of individuals associated together in a joint enterprise to carry on a business for profit under substantial resemblance to a corporation. (See Mertens, Law of Federal Income Taxation, Vol. 7a, p. 801.) The fact that it disposed of its operational assets and continued its existence primarily for the purpose of preventing a loss to its beneficial unit *212 holders and also to be in a position to function if it should become necessary to litigate the purchase price notes secured by trust deeds on the property which it had formerly sold, does not change its essential characteristics as a corporation. The Supreme Court of the United States in , declared concerning an association organized to operate a golf course but which had disposed of its operational assets and continued to collect dues and accounts receivable for the protection of the interests of its members: The fact that these sales were made before the beginning of the tax years here in question, [sales of lots resulting from the subdivision of land owned by the trust] and that the remaining property was conveyed to a corporation in exchange for its stock, did not alter the character of the organization. Its character was determined by the terms of the trust instrument. The Court held that this association continued to be taxable as a corporation after the disposal of its operational assets. In , the trustees had voluntarily limited their activity to less *213 than the powers conferred by the trust agreement to such an extent that it was claimed by the petitioner that the trust was not an association. The Board of Tax Appeals, in a memorandum opinion, held that it was. The Supreme Court, on page 286 says: The Board of Tax Appeals summed up its findings by saying: "These trustees, although they did not exercise all of the powers given to them in the trust insrument, were engaged, nevertheless, in carrying on a business for profit in much the same manner as the directors of a corporation are associated together for the purpose of carrying on a business enterprise." We think that the Board was right in its conclusion that the trust constituted an association within the meaning of the revenue acts. In , where petitioners, a voluntary trust, sought to avoid being taxed as a corporation, the Court says on page 485: As disclosed by the trust agreement its [the voluntary trust] purpose was to carry on the business of owning, managing, leasing and selling real property and sharing in the gains therefrom. The fact that there was only one piece of property is unimportant *214 * * *. So also is the fact that in the taxable year the trustees' activities were confined to the distribution of rents, payment of taxes, bookkeeping, and other incidental duties. The purpose of the trust is found in the instrument which created it. In , the Commissioner of Internal Revenue sought to tax petitioner, a voluntary trust, as a corporation for three years following the liquidation by the trust of its chief active operational asset, a shoe store, leaving only one inactive holding for which no sale could be found and the function of collecting and distributing rent from the lease to the beneficial holders. The Court says on page 390: With respect to the liquidation of the shoe business, it may be and is contended by respondent that the decreased activity of the trust for 1926 [the year in which the shoe business was liquidated] in fact altered its character, but under authority of Morrissey v. Commissioner * * *, we must hold in this case that such alteration does not follow. In the pending case at the time of the disposal of the operational assets the trust agreement was not modified. *215 The trustee and executive committee continued to exercise the same power, either actually or potentially, as before the sale. The trust continued to own 4,240 shares of revolving fund stock in the citrus association. It was faced with the possibility that in order to prevent a loss on the purchase price notes which it held for the ranch recently sold, it might be forced to foreclose and possibly reacquire that ranch. Furthermore, the trust agreement authorized the trustee to enforce a lien against the outstanding beneficial units of all members who refused or neglected to pay assessments. Therefore, if the trustees had liquidated these beneficial interests in 1939 they would have completely destroyed their potential lien against these units for the sake of enforcing the assessment levied in February 1941 against the beneficial interests. In short, the Rancho Golden Citrus Association not only continued to operate after the sale in substantially the same manner as before but, in order to protect its benefit holders from the threat of real loss, it was forced to so operate. It is our conclusion that the Rancho Golden Citrus Association was in effect a corporation until its dissolution *216 and liquidation in December 1941 and that the capital loss of petitioners is determined by the difference between the base price of their beneficial interests in said association and the amounts received by them from liquidation in 1941. Judgment will be entered for the petitioners.